# IN THE INTERMEDIATE COURT OF APPEALS OF WEST VIRGINIA

**FILED**

**November 18, 2022**

EDYTHE NASH GAISER, CLERK
INTERMEDIATE COURT OF APPEALS
OF WEST VIRGINIA

**GEORGE E. KEATON,**
**Claimant Below, Petitioner**

**vs.)    No. 22-ICA-32        (JCN: 2020021565)**

**BECKLEY GARBAGE DISPOSAL,**
**Employer Below, Respondent**

## MEMORANDUM DECISION

Petitioner George E. Keaton appeals the July 15, 2022, order of the Workers' Compensation Office of Judges ("Office of Judges"). Respondent Beckley Garbage Disposal ("Beckley Garbage") filed a timely response.[1] No reply was filed. The issue on appeal is whether the Office of Judges erred in affirming the claim administrator's orders closing the claim for temporary total disability ("TTD") benefits and denying the additional diagnoses of right shoulder pain, right shoulder bursitis, right shoulder impingement, and right shoulder arthropathy.

This Court has jurisdiction over this appeal pursuant to West Virginia Code § 51-11-4 (2022). After considering the parties' briefs, the record on appeal, and the applicable law, this Court finds no substantial question of law and no prejudicial error. For these reasons, a memorandum decision affirming the Office of Judge's order affirming the closure of the claim for TTD benefits and affirming the denial of additional diagnoses in the claim is appropriate under Rule 21 of the Rules of Appellate Procedure.

Mr. Keaton suffered an injury on March 14, 2020, while pushing a dumpster during his employment with Beckley Garbage. As a result of his injury, Mr. Keaton filed a workers' compensation claim. The claim was held compensable for fracture of the right clavicle by a claim administrator's order dated March 23, 2020. Imaging performed on Mr. Keaton's shoulder included an x-ray on May 5, 2020, which revealed acromioclavicular arthropathy, and a right shoulder MRI performed on May 13, 2020, which revealed impingement syndrome and subacromial bursitis, but no tear of the rotator cuff or glenoid labrum. X-rays performed on July 21, 2020, revealed mild/moderate AC joint arthropathy with hypertrophic change. Dr. Gordon Holen performed arthroscopic shoulder surgery on Mr. Keaton's right shoulder on August 7, 2020. The surgery was covered in the claim.

---

[1] Petitioner is represented by Reginald D. Henry, Esq. Respondent is represented by Jillian L. Moore, Esq.

The claim administrator referred Mr. Keaton to Dr. Joseph E. Grady, II, for an independent medical evaluation ("IME"), which was performed on March 9, 2021. Dr. Grady determined Mr. Keaton was at his maximum medical improvement ("MMI") for the injury and found a 5% whole-person impairment related to the injury. In reviewing the imaging, Dr. Grady determined that Mr. Keaton's injury was superimposed upon preexisting degenerative joint disease in the right shoulder. On April 21, 2021, the claim administrator closed the claim for temporary total disability benefits. Mr. Keaton protested the closure order to the Office of Judges.

Dr. Holen continued to treat Mr. Keaton for ongoing shoulder problems. Another MRI was performed on May 7, 2021, which showed mild bursal surface irregularity of the supraspinatus, tendinopathy, fraying of the infraspinatus, and tendinopathy of the biceps tendon. High-grade acromioclavicular arthropathy was also present. When Dr. Holen saw Mr. Keaton on May 13, 2021, his diagnoses for the right shoulder included acute pain, arthropathy, bursitis, and impingement. On July 30, 2021, Dr. Holen completed a Diagnosis Update form asking for these secondary conditions to be ruled compensable in the claim.

Dr. Rebecca Thaxton wrote a Physician Review dated August 5, 2021, in which she reviewed Mr. Keaton's medical records. She advised the claim administrator not to add the conditions in the Diagnosis Update to the claim as she explained that the medical records did not show the conditions were causally related to the injury. She also stated that pain and arthropathy were vague and non-descript codes, whereas more specific conditions had been ruled compensable in the claim. Further, she found that bursitis and impingement were degenerative and preexisting conditions that were addressed in the surgery as permitted under West Virginia Code of State Rules § 85-20-21 (2006). Dr. Thaxton said that this rule allows treatment for preexisting conditions in some cases, but it does not require that any and all future treatments for such conditions be covered in the claim. The claim administrator agreed with Dr. Thaxton and issued an order dated September 1, 2021, denying the addition of the secondary conditions to the claim. Mr. Keaton protested this denial to the Office of Judges.

In the decision dated July 15, 2022, the Office of Judges relied upon Dr. Thaxton's report to affirm the order denying the secondary conditions. The decision found Mr. Keaton had a pre-injury history of right shoulder pain. A Finding of Fact in the decision stated that Dr. Holen's treatment notes dated May 13, 2021, indicated that he assumed Mr. Keaton's persistent pain was related to the underlying osteoarthritis. Finally, the decision cited Syllabus Point 3 of *Gill v. City of Charleston*, 236 W. Va. 737, 783 S.E.2d 857 (2016), in which the Supreme Court of Appeals of West Virginia ruled:

> A noncompensable preexisting injury may not be added as a compensable component of a claim for workers' compensation medical benefits merely because it may have been aggravated by a compensable

2

injury. To the extent that the aggravation of a noncompensable preexisting injury results in a [discrete] new injury, that new injury may be found compensable.

The Office of Judges' decision found no "discrete new injury" regarding the conditions listed in the Diagnosis Update. Instead, the decision found the conditions at issue were preexisting and held that the claim administrator did not err when it denied their compensability and closed Mr. Keaton's claim for TTD benefits. The decision relied upon Dr. Grady's finding that Mr. Keaton had achieved MMI for the injury and did not require any maintenance care for the compensable injury. Mr. Keaton now appeals the Office of Judges' decision.

The standard of review applicable to this Court's consideration of workers' compensation appeals is set forth in West Virginia Code § 23-5-12a(b) (2022), which states, in part, as follows:

> The Intermediate Court of Appeals may affirm the order or decision of the Workers' Compensation Board of Review or remand the case for further proceedings. It shall reverse, vacate, or modify the order or decision of the Workers' Compensation Board of Review, if the substantial rights of the petitioner or petitioners have been prejudiced because the Board of Review's findings are:
> (1) In violation of statutory provisions;
> (2) In excess of the statutory authority or jurisdiction of the Board of Review;
> (3) Made upon unlawful procedures;
> (4) Affected by other error of law;
> (5) Clearly wrong in view of the reliable, probative, and substantial evidence on the whole record; or
> (6) Arbitrary or capricious or characterized by abuse of discretion or clearly unwarranted exercise of discretion.

Although this statute specifically references orders of the Board of Review, the same standard applies to our review of orders issued by the Office of Judges during the period of time when administrative proceedings were being transferred from the Office of Judges to the Board of Review. *See* W. Va. Code § 23-5-8a (2022) (transferring powers and duties of Office of Judges to Board of Review); W. Va. Code § 23-5-12(b) (2021) (specifying this same standard of review when Board of Review heard appeals of Office of Judges' orders).

On appeal, Mr. Keaton contends that the Office of Judges erred in finding that his shoulder pain, bursitis, impingement, and arthropathy were not conditions received in the course of, and resulting from employment. He argues that a preponderance of the evidence shows the conditions are related to the compensable injury. Mr. Keaton further alleges that

3

he was working without experiencing problems until the injury and he had no treatment for his shoulder until the injury. In support of his claim, Mr. Keaton cites Syllabus Point 5, *James A. Moore v. ICG Tygart Valley, LLC*, No. 20-0028, 2022 WL 1262269 (W. Va. Apr. 28, 2022), which states:

> A claimant's disability will be presumed to have resulted from the compensable injury if: (1) before the injury, the claimant's preexisting disease or condition was asymptomatic, and (2) following the injury, the symptoms of the disabling disease or condition appeared and continuously manifested themselves afterwards. There still must be sufficient medical evidence to show a causal relationship between the compensable injury and the disability, or the nature of the accident, combined with the other facts of the case, raises a natural inference of causation. This presumption is not conclusive; it may be rebutted by the employer.

Mr. Keaton contends that even if he had some minimal pre-injury shoulder pain, it did not require treatment and did not interfere with his work duties. Rather, he avers that his workplace injury rendered him unable to perform his job and caused increased pain and, as such, should be added to his claim.

Further, Mr. Keaton argues the Office of Judges erred in relying upon Dr. Thaxton's record review rather than Dr. Holen's reports since he was the treating physician and was in the best position to determine the compensable conditions and TTD benefits. Mr. Keaton notes that Dr. Holen kept him off work or at less than full duty after the TTD benefits were suspended. He argues the benefits should extend through October 21, 2021.

Conversely, Beckley Garbage argues the Office of Judges did not commit reversible error as it correctly held that Mr. Keaton did not develop pain, bursitis, impingement, and arthropathy in his right shoulder as a result of the compensable injury. Arguing that "pain" should not be held compensable, Beckley Garbage cites *Knicely v. Myers Fun Time Café, LLC*, No. 14-0010, 2015 WL 1244552 (Mar. 17, 2015) (memorandum decision), in which the Supreme Court of Appeals of West Virginia found "lumbago" or low back pain was not an acceptable compensable condition in a workers' compensation claim. Further, Beckley Garbage argues the other secondary conditions at issue here are degenerative and preexisted the injury. For example, it notes that imaging performed soon after the injury revealed arthropathy. Also, Drs. Grady and Thaxton concluded that Mr. Keaton had preexisting degenerative conditions in his right shoulder that were unassociated with the compensable injury. Even Dr. Holen, it argues, indicated Mr. Keaton's pain stemmed from the underlying osteoarthritis.

Beckley Garbage suggests that the Court in *Moore* continued to endorse its previous holding in *Gill*. It argues none of the diagnoses at issue in this appeal were discrete new injuries, but were longstanding conditions related to the natural aging process.

4

Additionally, Beckley Garbage argues that TTD benefits are properly terminated when an injured worker achieves MMI or is certified to return to work. It noted Dr. Grady placed Mr. Keaton at MMI and while Dr. Holen continued to treat Mr. Keaton after that finding, he later performed a shoulder replacement for noncompensable conditions. Beckley Garbage notes the shoulder replacement surgery was not requested in the claim, and it was not authorized in the claim. Thus, it argues, Mr. Keaton was not entitled to further TTD benefits.

Finally, Beckley Garbage argues that the Office of Judges' decision was not clearly wrong, but instead, was supported by competent evidence. It argues that Mr. Keaton failed to meet his burden of proof regarding the compensability of the secondary conditions and the closure of TTD benefits.

Upon review, we agree with Beckley Garbage and find no error in the Office of Judges' analysis and conclusion that Mr. Keaton's right shoulder pain, right shoulder bursitis, right shoulder impingement, and right shoulder arthropathy were not sustained in the course of, and as a result of, his covered employment when he suffered the right clavicle fracture. It is noted that pain is a general diagnosis that is encompassed by other, more specific compensable conditions. In the present case, Mr. Keaton's treating physician said his persistent pain was related to underlying osteoarthritis. As Dr. Thaxton and Dr. Grady indicated, the workplace injury occurred on top of the degenerative shoulder conditions as revealed by the July 21, 2020, x-ray. Therefore, the Office of Judges had an adequate evidentiary foundation for its decision and Mr. Keaton did not prove it erred in finding pain and arthropathy were not compensable.

Similarly, we find no error in the Office of Judges' ruling that Mr. Keaton's bursitis and impingement were not compensable. The Office of Judges did not err in relying on Dr. Thaxton's report in which she stated that the medical records showed these conditions were unrelated to the compensable injury. Dr. Holen's reports do not specifically address this issue and did not rebut Dr. Thaxton's findings. Instead, Dr. Holen's operative report dated August 7, 2020, characterized some of the conditions in the shoulder as "degenerative." Dr. Thaxton's statements are also bolstered by Dr. Grady's report that said Mr. Keaton's shoulder had preexisting degenerative changes that were unrelated to the injury.

Mr. Keaton cites the Court's holding in *Moore* and argues these conditions should be found compensable, regardless of whether they preexisted the injury. He argues that compensability was established because the conditions did not require treatment and did not interfere with his work until the injury in the claim. We are not persuaded by his argument. The evidence here tends to show Mr. Keaton's preexisting shoulder conditions were symptomatic before the injury occurred.

Importantly, the Court in *Moore* did not say compensability merely rested upon proving a condition was asymptomatic until the occupational injury occurred. The Court

5

still required "sufficient medical evidence to show a causal relationship between the compensable injury and the disability, or the nature of the accident, combined with the other facts of the case, raises a natural inference of causation. This presumption is not conclusive; it may be rebutted by the employer." *Moore*, 2022 WL 1262269 at \*1, Syl. Pt. 5. In the present case, the Office of Judges did not err in finding the secondary conditions were preexisting and not discrete new injuries related to the injury in the claim as a causal relationship between the injury and the disability was not proven.[2]

Further, we find no error in the Office of Judges' analysis and conclusion that the closure of Mr. Keaton's TTD benefits was proper since Mr. Keaton reached MMI, as determined by Dr. Grady on March 9, 2021. West Virginia Code § 23-4-7a(e)(4) (2005) provides, in part, as follows:

> In all cases, a finding by . . . [the] private carrier or self-insured employer, whichever is applicable, that the claimant has reached his or her maximum degree of improvement terminates the claimant's entitlement to temporary total disability benefits regardless of whether the claimant has been released to return to work. Under no circumstances shall a claimant be entitled to receive temporary total disability benefits either beyond the date the claimant is released to return to work or beyond the date he or she actually returns to work.

Dr. Grady's finding of MMI for the compensable conditions was not rebutted. After being placed at MMI, Dr. Holen performed a noncompensable surgery on Mr. Keaton's shoulder on August 26, 2021. This surgery was not covered in the claim and does not rebut Dr. Grady's finding of MMI for the compensable conditions. Thus, the additional surgery cannot serve as a basis to maintain TTD benefits.

Based on the foregoing, we find that Mr. Keaton has failed to demonstrate that the Office of Judges was clearly wrong in affirming the claim administrator's orders dated April 21, 2021, and September 1, 2021.

Accordingly, we affirm.

Affirmed.

ISSUED: November 18, 2022

---

[2] Although the OOJ did not specifically cite the *Moore* opinion, the OOJ nonetheless performed the analysis specified in *Moore*. The OOJ considered evidence that Mr. Keaton was symptomatic before this injury.

**CONCURRED IN BY:**

Chief Judge Daniel W. Greear
Judge Charles O. Lorensen
Judge Mark E. Wills, sitting by temporary assignment

Judge Thomas E. Scarr, voluntarily recused